UNITED STATES of America,
Plaintiff–Appellee,

v.

Stanley PLESINSKI,
Defendant–Appellant.

No. 89–50206.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1990.

Decided Aug. 10, 1990.

**1034**

Eugene G. Iredale, San Diego, Cal., for defendant-appellant.

Sanford Feldman, Sp. Asst. U.S. Atty., and Thomas J. Umberg, Asst. U.S. Atty., Santa Ana, Cal., for plaintiff-appellee.

Before REINHARDT, LEAVY and RYMER, Circuit Judges.

LEAVY, Circuit Judge:

Stanley Plesinski appeals from his conviction following a conditional plea of guilty for conspiracy to possess marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Plesinski appeals the district court's denial of his motion to dismiss the indictment or to disqualify Special Assistant U.S. Attorney Sanford Feldman on the grounds Feldman was unauthorized, due to an ineffective appointment, to represent the government in the criminal proceedings. We affirm.

## FACTS AND PROCEEDINGS

On May 18, 1988, a four-count indictment was filed against Stanley Plesinski and co-defendant Jacob Vinograd on drug-related charges. The indictment was subsequently superseded on September 9, 1988, and again on January 12, 1989. The second superseding five-count indictment charged Plesinski with conspiring in 1985 to possess marijuana with the intent to distribute, possession of marijuana in 1985, conspiring in 1988 to possess marijuana with the intent to distribute, and two counts of possession of marijuana in 1988.

Sanford Feldman, a Deputy Attorney General for the State of California, partici-

pated in the indictment, prosecution, and sentencing of Plesinski. Feldman was appointed as a Special Assistant U.S. Attorney by Brian Meyers, Deputy Director of the Office of Attorney Personnel Management for the Department of Justice ("Deputy Director"), on September 19, 1986. Feldman took the oath of office on October 26, 1986. On April 1, 1987, Meyers extended Feldman's appointment, which had expired on March 31, 1987, through April 30, 1988. After a two-day lapse, the appointment was extended again on May 2, 1988, by Deputy Director Mark Wilkoff to April 30, 1989. Feldman did not take a second oath following the May 1988 extension of his appointment.

The Deputy Directors' authority to appoint Feldman stemmed from a 1981 Attorney General Order which delegated to the Associate Attorney General the Attorney General's power and authority under 28 U.S.C. § 543 to appoint special "attorneys to assist United States Attorneys."[1] *See* 28 C.F.R. § 0.19(a)(1) (1981). The Associate Attorney General in turn was authorized to "redelegate" that authority "to the official in the Office of the Deputy Attorney General responsible for attorney personnel management." *Id.* § 0.19(b). By written orders, the acting Associate Attorney Generals thereafter redelegated the appointment authority to the appropriate official, the Director of the Office of Attorney Personnel Management ("Director"), Linda Cinciotta. Pursuant to another Attorney General Order authorizing the Director to convey that authority to her Deputy Director, *see* 28 C.F.R. § 0.15(e)(2) (1985), Cinciotta issued a memorandum redelegating her section 543 appointment authority to Deputy Director Meyers on August 10, 1984, and to Deputy Director Wilkoff on July 30, 1987.

On February 24, 1988, the Attorney General published an order which transferred the authority to appoint special assistant U.S. attorneys from the Associate Attorney General back to the Deputy Attorney Gen-

---

**1.** The 1981 Order effectively transferred the appointment authority from the Deputy Attorney General to the Associate Attorney General.

eral. *See* 28 C.F.R. § 0.15(b)(1)(v) (1988). While the regulations permitted the Deputy Attorney General to "redelegate" that authority to Director Cinciotta, *id.* §§ 0.15(c) & (e), the Deputy Attorney General did not do so until January 31, 1989. The second extension of Feldman's appointment by Deputy Director Wilkoff in May 1988 occurred after the February 1988 transfer of appointment power to the Deputy Attorney General but before the January 1989 redelegation to the Director by the Deputy Attorney General.

At the request of the U.S. Attorneys Office for the Central District of California, by letter dated November 23, 1988, Deputy Director Wilkoff issued a second appointment for Feldman as a Special Assistant U.S. Attorney to expire April 30, 1989. Feldman took the oath of office again on November 23, 1988.

On December 20, 1988, Plesinski moved to dismiss the indictment or, in the alternative, to disqualify Feldman and to relitigate the motions that had previously been decided on the grounds Feldman was not properly authorized to act as a Special Assistant U.S. Attorney. Plesinski argued the second extension of Feldman's appointment in May 1988 and his reappointment in November 1988 were ineffective because the Deputy Attorney General had not as yet redelegated his appointment power to either the Director or the Deputy Director.

On February 6, 1989, the court orally denied Plesinski's motion to dismiss or disqualify Feldman. While the district judge found that Feldman was not properly authorized to appear before the court as of May 2, 1988, she denied the motion to dismiss the indictment on the grounds the unauthorized participation was "harmless." With respect to disqualification, the court found that Feldman acted at all times under the supervision of an assistant U.S. attorney, and on that basis would not

"undo that which [had] already been done with regard to the [previously decided] motions." The court also denied Plesinski's request that Feldman not participate further in the proceedings, but stated that "it must be understood that if Mr. Feldman does nothing, he would effectively disqualify himself for future proceedings." The court noted that the supervising assistant U.S. attorney could "cure" the defective appointment or "tak[e] steps that would make a difference that would let him participate in future proceedings."

On February 8, 1989, Plesinski entered a conditional plea of guilty pursuant to Fed. R.Crim.P. 11(a)(2)[2] to the 1985 conspiracy count, thereby preserving his right to appeal the denial of the motion to dismiss or disqualify Feldman. At the government's request, the remaining four counts of the second superseding indictment were dismissed. On February 9, 1989, Feldman was properly appointed as a Special Assistant U.S. Attorney by Director Cinciotta. On April 3, 1989, Feldman appeared on behalf of the government at sentencing, wherein Plesinski was sentenced to nine years imprisonment pursuant to 18 U.S.C. § 4205(b)(2). This timely appeal followed.

## STANDARD OF REVIEW

■ We review de novo the district court's refusal to dismiss the indictment for prosecutorial misconduct. *United States v. Spillone,* 879 F.2d 514, 520 (9th Cir.1989).[3] The district court's refusal to disqualify the prosecutor is reviewed for abuse of discretion. *See United States v. Bolton,* 905 F.2d 319, 321 (10th Cir.1990).

## DISCUSSION

### I. COLLATERAL ATTACK OF APPOINTMENT

■ At the onset, the government argues that Plesinski may not collaterally

---

**2.** Rule 11(a)(2) provides:

   With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A de-

fendant who prevails on appeal shall be allowed to withdraw the plea.

**3.** We note, however, that this court has applied an abuse of discretion standard on at least two occasions. *See United States v. Gonzalez,* 800 F.2d 895, 899 (9th Cir.1986); *United States v. Noti,* 731 F.2d 610, 613 (9th Cir.1984).

attack the validity of Feldman's appointment in this criminal proceeding, but rather must pursue it in a separate proceeding for that purpose. *See United States v. Mitchell*, 136 F. 896 (C.C.Or.1905). We disagree.

In *Mitchell*, the defendant filed "pleas of abatement"[4] challenging the indictment on the grounds the grand jury was not "regularly" impaneled and the special prosecutor bringing the indictment was improperly appointed. In considering the pleas pretrial, we held, *inter alia*, that a court-appointed special prosecutor's "right to the office cannot be collaterally attacked." *Id.* at 906.

> [I]f the office has been lawfully established and a person exercises the functions thereof by color of right, but whose election or appointment thereto is illegal, his official acts therein cannot be successfully attacked in collateral proceedings, but in all such proceedings will be valid and binding until the officer is ousted by the judgment of a court in a direct proceeding to try his title to the office.

*Id.* (quotation omitted).

The holding of *Mitchell* is inapplicable in this case because Plesinski is not "collaterally attacking" Feldman's appointment. Unlike the defendant in *Mitchell* who filed a "plea of abatement" action to test the prosecutor's authority pretrial, Plesinski is challenging Feldman's authority in a direct appeal following his conviction. Both the Supreme Court and this court have permitted similar challenges to the authority of the specially-appointed prosecutor on appeal from a criminal conviction. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (reversal of contempt conviction on the grounds the court improperly appointed the beneficiary of the contempt order to prosecute the defendant for an alleged violation of that order); *United States v. Hawthorne*, 626 F.2d 87, 89–90 (9th Cir.1980) (per curiam). Accordingly, Plesinski may challenge Feldman's authori-

ty to act as a special assistant U.S. attorney in this appeal.

## II. THE APPOINTMENT OF FELDMAN

Plesinski argues that the district court erred in refusing to dismiss the indictment or disqualify Special Assistant Feldman. Plesinski raises three arguments as to why Feldman's appointment was ineffective: (A) the appointments clause required that the Attorney General personally appoint Feldman; (B) assuming the Attorney General may delegate his appointment powers, the chain of delegation was flawed; and (C) Feldman acted without authority because he did not renew the oath of office after the second extension of his appointment on May 2, 1988.

### A. Appointments Clause

■ Plesinski argues that Feldman was not authorized to participate in the prosecution because he was not personally appointed by the Attorney General to serve as a Special Assistant U.S. Attorney. Plesinski maintains that the appointments clause of the United States Constitution prohibits the Attorney General from delegating his power to appoint special assistant U.S. attorneys.

The appointments clause provides in pertinent part:

> [The President] shall nominate, and by and with the Advise and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: *but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.*

U.S. Const. art. II, § 2, cl. 2 (emphasis added). Congress thereafter vested in the Attorney General, the head of the Depart-

---

**4.** A "plea of abatement sets forth facts extrinsic to [the] merits which affect only [the] manner in which [an] action is framed or [the] circumstances under which it is sought to be prose-cuted, and does not destroy the right of action but merely suspends or postpones its prosecution." *Black's Law Dictionary* 1038 (5th ed. 1979).

ment of Justice, the authority to "appoint attorneys to assist United States attorneys when the public interest so requires." *See* 28 U.S.C. § 543(a). Plesinski argues that section 543 represents an exercise of Congress' power under the appointments clause and therefore the Attorney General "alone" had to appoint Feldman and that such appointment authority could not constitutionally be delegated to lesser officials. We disagree.

Congress has passed legislation which permits the Attorney General to "make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." *See* 28 U.S.C. § 510. Several courts have held that the Attorney General may, pursuant to section 510, redelegate his authority to appoint special assistants to the Attorney General under 28 U.S.C. § 515(a)[5] to subordinates in the Department of Justice. *See United States v. Cravero*, 545 F.2d 406, 410 (5th Cir. 1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977); *United States v. Agrusa*, 520 F.2d 370, 372 (8th Cir.1975). We have also noted in dictum that the argument "the Attorney General is without authority to delegate his power to [appoint] government attorneys" under section 515(a) is "without merit." *See United States v. Prueitt*, 540 F.2d 995, 1000 (9th Cir.1976), *cert. denied*, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977).

We find that section 510 also authorizes the delegation of the Attorney General's appointment powers under section 543(a). Congress expressly gave the Attorney General permission to delegate "any" of his functions. There is no indication Congress meant to exclude the Attorney General's section 543 appointment power from this

otherwise unqualified statutory authorization of delegation. Having granted the Attorney General the authority to appoint government attorneys, it was within Congress' power to permit a delegation of that authority, and we find nothing in the text or history of the Constitution which suggests otherwise. Thus, we reject Plesinski's argument that the Attorney General's appointment power under section 543 may not constitutionally be delegated to lesser officials.

### B. Chain of Delegation

■ Assuming the Attorney General may delegate his appointment power, Plesinski argues that the person to whom the Attorney General had delegated his authority, the Deputy Attorney General, had not properly redelegated that authority either to the Director or to the official renewing Feldman's appointment on May 2, 1988. The Deputy Attorney General did not officially redelegate the appointment authority to Director Cinciotta until January 31, 1989. Thus, Feldman was not authorized to act as Special Assistant U.S. Attorney during Plesinski's indictment and prosecution.

The government acknowledges that "[i]t is undisputed in the instant case that the Deputy Attorney General did not execute a written delegation of the power to appoint Special Assistant United States Attorneys to the Office of the Attorney Personnel Management during the period February 16, 1988 to January 30, 1989." However, it argues the absence of such a writing during that period does not invalidate Feldman's appointment. The government relies on *United States v. Balistrieri*, 779 F.2d 1191, 1209 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986), in which the court held that "a

---

**5.** Section 515(a) provides:

The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to con-

duct, whether or not he is a resident of the district in which the proceeding is brought.

Sections 543 and 515 are considered independent statutory authorizations. Section 543 authorizes the appointment of attorneys to assist the U.S. Attorney, while section 515 authorizes the appointment of attorneys to assist the Attorney General. *United States v. Hawthorne*, 626 F.2d 87, 89 (9th Cir.1980) (per curiam).

letter of authorization is not essential to the validity of an appointment under § 515(a)" if there is sufficient evidence the special prosecutor "was in fact authorized to appear" in the proceedings.

The government's argument misses the mark. The issue in this case is not whether or when a particular appointment was made as in *Balistrieri*, but whether the appointing official had the authority to make the appointment. It is undisputed that the Deputy Attorney General had not redelegated his appointment authority to the officer who appointed Feldman on May 2, 1988. Thus, no evidence could be presented to the effect that Feldman was "in fact authorized to appear" in the proceedings against Plesinski.

Contrary to Plesinski's suggestion, however, Feldman's unauthorized appearance on behalf of the government did not deprive the district court of jurisdiction over the criminal proceedings. Granted, 28 U.S.C. §§ 516 and 547 reserve litigation in which the United States is a party either to officers of the Department of Justice or to U.S. Attorneys.[6] However, while he appeared in court alone on several occasions, Feldman testified he was not the only government attorney assigned to the case and that he was at all times acting under the direction and supervision of an Assistant U.S. Attorney. Under these circumstances, the court retained its jurisdiction over Plesinski's prosecution despite Feldman's unauthorized participation. *See United States v. Providence Journal Co.*, 485 U.S. 693, 108 S.Ct. 1502, 1511, 99 L.Ed.2d 785 (1988) (Court lacked jurisdiction unless "a proper representative of the Government" participated in the action); *Home News Publishing Co. v. United States*, 329 F.2d 191, 193 (5th Cir.1964) (court retained jurisdiction where Assistant U.S. Attorney "stands responsible for conduct of the trial"); *United States v. Denton*, 307 F.2d 336, 338–39 (6th Cir.), *cert. denied*, 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962).

Nor did Feldman's unauthorized presence before the grand jury require a dismissal of the indictment. In *United States v. Mechanik*, 475 U.S. 66, 71–72, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986), the Supreme Court adopted the harmless error standard of Fed.R.Crim.P. 52(a)[7] for violations of Fed.R.Crim.P. 6(d)[8]. *See also Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) ("a District Court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants"). Where a dismissal is sought for nonconstitutional errors, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* 108 S.Ct. at 2374 (quoting *Mechanik*, 475 U.S. at 78, 106 S.Ct. at 945 (O'Connor, J., concurring)).

Plesinski has not demonstrated nor does he claim that Feldman's unauthorized presence as an observer[9] "substantially influ-

---

**6.** Section 516 provides: "Except as otherwise authorized by law, the conduct of litigation in which the United States ... is a party ... is reserved to officers of the Department of Justice, under the direction of the Attorney General."

Section 547(1) provides: "Except as otherwise provided by law, each United States Attorney, within his district, shall ... prosecute for all offenses against the United States."

**7.** Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

**8.** Rule 6(d) provides that only "[a]ttorneys for the government, the witness under examination, interpreters when needed and ... a stenogra-

pher or operator of a recording device may be present while the grand jury is in session...." Rule 54(c) states that "'Attorney for the government' means the Attorney General, a United States Attorney, [or] an authorized assistant of a United States Attorney...."

**9.** The government represented that "Feldman did not say or do anything nor did anyone make any reference to him in front of the grand jury." Plesinski did not dispute this and "accept[ed the government's] representation as though under oath."

enced" the grand jury's decision to indict him. Nor does he claim the grand jury proceedings were fundamentally unfair for that reason.[10] Under these circumstances, the district court did not err in denying Plesinski's motion to dismiss the indictment.

Similarly, the district court properly refused to rehear previously decided motions based on Feldman's unauthorized participation.[11] Again, Plesinski does not claim that he was prejudiced by Feldman's participation in the pretrial motions. He merely claims that he is "entitled to have a duly authorized and properly qualified representative of the government study, analyze, and present the government's position" with respect to these motions. In fact, while Feldman may have prepared and argued the government's responses to several of Plesinski's pretrial motions, he testified that his actions were "subject to [the supervising Assistant U.S. Attorney's] approval" and that he did not make the final decisions in connection with the prosecution. Under these circumstances, Plesinski has already received the remedy which he requests today.

And finally, while the district court denied Plesinski's motion that Feldman be barred from any further participation in the proceedings, the court made it clear that any future participation was conditioned on a "cure" in the unauthorized appointment. Feldman did not appear on behalf of the government again until Plesinski's sentencing, at which time the defective appointment had been cured. It was not an abuse of discretion for the district court to deny Plesinski's motion upon the condition of a "cure."

### C. Oath Requirement

 Plesinski argues that the failure to readminister an oath on May 2, 1988, after the lapse of Feldman's appointment on April 30, 1988, vitiated any valid authorization he may have had to conduct proceedings as a Special Assistant U.S. Attorney. Title 28, United States Code, § 544 provides that each "attorney appointed under section 543 of this title, before taking office, shall take an oath to execute faithfully his duties." Plesinski relies on *United States v. Pignatiello*, 582 F.Supp. 251 (D.Colo.1984), wherein the court dismissed an indictment based on the special prosecutor's failure to take the oath prior to appearing before the grand jury.

*Pignatiello* is inapplicable in this case. Unlike the special prosecutor in *Pignatiello*, Feldman had taken the oath of office upon his original valid appointment on October 26, 1986. Admittedly, he did not renew the oath of office following his unauthorized reappointment after a two-day lapse in May 1988. However, Feldman, who was not aware of any defect in the appointment until November 1988, continued to act as a special prosecutor, presumably in reliance upon the original oath. When it was discovered that the May 1988 appointment was defective, Feldman immediately renewed the oath of office on November 23, 1988. Under these circumstances, we find that Feldman sufficiently complied with the oath requirement of section 544.

AFFIRMED.

---

**10.** A presumption of prejudice arises where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Bank of Nova Scotia,* 108 S.Ct. at 2375; *see United States v. Howard,* 867 F.2d 548, 551–52 (9th Cir.1989). Certainly, Feldman's silent observation of the grand jury proceeding does not rise to this level.

**11.** The motions which Plesinski sought to relitigate were argued on January 23, 1988. Plesinski did not object to Feldman's participation in the proceedings until December 20, 1988, eleven months later. Several courts have held that a defendant waives strict compliance with section 515 where he fails to object to the unauthorized attorney's participation in a timely manner. *See Wall v. United States,* 384 F.2d 758, 763 (10th Cir.1967); *Home News Publishing Co. v. United States,* 329 F.2d 191, 193 (5th Cir.1964); *United States v. Denton,* 307 F.2d 336, 338–39 (6th Cir.), *cert. denied,* 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962).