**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

LAL BHATIA,
              *Defendant-Appellant.*

No. 07-10424

D.C. No.
CR-05-00334-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
August 12, 2008—San Francisco, California

Filed September 24, 2008

Before: Eugene E. Siler, Jr.,* M. Margaret McKeown, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge McKeown

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

13613

**COUNSEL**

Stanley G. Hilton, Esq., Law Offices of Stanley G. Hilton, San Francisco, California, for the defendant-appellant.

Joseph P. Russoniello, United States Attorney, Barbara J. Valliere, Chief, Appellate Section, Stephen G. Corrigan, Assistant United States Attorney, Oakland, California, for the plaintiff-appellee.

**OPINION**

McKEOWN, Circuit Judge:

The issue we consider is whether there was privity between the government and a third party in a civil fraud action sufficient to bar a subsequent criminal prosecution of Lal Bhatia for wire fraud and money laundering. Bhatia argues that because the government took the "laboring oar" in the civil

action, there was sufficient privity for application of res judicata and collateral estoppel. The facts do not support such a claim. Instead, Bhatia's argument is a variation on the "virtual representation" theory recently rejected by the Supreme Court in *Taylor v. Sturgell*, 128 S.Ct. 2161 (2008). Because his claims of res judicata and collateral estoppel are not colorable, we dismiss this interlocutory appeal for lack of jurisdiction.

## BACKGROUND

In 2004, Bhatia was one of several defendants sued in federal court in Texas. The plaintiff was an entity named Inderra Houston, L.P. ("Inderra"), which was formed to build a real estate project in Houston, Texas. Its principals, Ralph Abercia, Sr. and Ralph Abercia, Jr., sought sources of financing for the project and eventually met with representatives of Wolfe & Turner and Sherwin & Noble, including Bhatia. Bhatia was in charge of both entities, and represented that Sherwin & Noble could fund a $105 million loan upon Inderra's payment of a $1.575 million loan commitment fee. Although the Abercias agreed, and paid the fee, Inderra never received the loan proceeds. It then filed suit against Bhatia and eight other defendants for fraud, negligence, and breach of fiduciary duty. In the midst of discovery, Inderra filed a motion for voluntary dismissal of the action. The court eventually dismissed Bhatia and his co-defendants with prejudice.

While the civil proceeding was pending, the government filed a criminal complaint against Bhatia and three other individuals allegedly involved in the Inderra transaction. They were ultimately indicted in federal court in California on three counts of wire fraud, 18 U.S.C. § 1343, and four counts of money laundering, 18 U.S.C. § 1957(a). Bhatia moved to dismiss the criminal indictment on grounds of collateral estoppel and res judicata, and the district court denied the motion. After Bhatia filed his notice of appeal, the government requested that Bhatia's claims of res judicata and collateral estoppel be found not colorable, so as to preclude appellate

jurisdiction. The district court denied the government's request.

## ANALYSIS

**[1]** Generally, denials of pre-trial motions are not considered final, appealable judgments, but we do have jurisdiction where a "colorable" claim of double jeopardy is raised.[1] *See Richardson v. United States*, 468 U.S. 317, 322 (1984); *United States v. Cejas*, 817 F.2d 595, 596 (9th Cir. 1987). To be colorable, Bhatia's claims of res judicata and collateral estoppel must have " 'some possible validity.' " *United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005) (per curiam) (quoting *United States v. Sarkisian*, 197 F.3d 966, 983 (9th Cir. 1999)).

**[2]** Res judicata, or claim preclusion,[2] "provides that 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' " *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The related doctrine of collateral estoppel, or issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Both doctrines apply to criminal and civil proceedings, *Cejas*, 817 F.2d at 598, and both require privity between the parties. *See In re Schimmels*, 127 F.3d at 881 (noting that, under res judicata, "parties or their privies" may be bound by

---

[1] We review de novo the denial of a motion to dismiss on double jeopardy grounds. *United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002).

[2] The Supreme Court recently clarified that the terms "claim preclusion" and "issue preclusion" are collectively referred to as "res judicata." *Taylor*, 128 S.Ct. at 2171. The record and briefs reflect that the district court and the parties used the term "res judicata" to mean "claim preclusion," and "collateral estoppel" to mean "issue preclusion."

a prior judgment); *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1000 (9th Cir. 1980) (requiring identity or privity between parties for collateral estoppel to apply).

**[3]** Bhatia grounds his privity argument on the notion that the government "assisted [Inderra] by procuring evidence and interviewing witnesses" during the civil action. Privity "is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' " *In re Schimmels*, 127 F.3d at 881 (quoting *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)). The federal courts "have deemed several relationships 'sufficiently close' to justify a finding of 'privity' and, therefore, preclusion under the doctrine of *res judicata*." *Id.* (quoting *Sw. Airlines*, 546 F.2d at 95). The Supreme Court recently referenced a relationship justifying a finding of privity where a nonparty " 'assume[d] control' over the litigation in which that judgment was rendered." *Taylor*, 128 S.Ct. at 2173 (quoting *Montana*, 440 U.S. at 154); *see also In re Schimmels*, 127 F.3d at 881 (noting that a "non-party who controlled the original suit will be bound by the resulting judgment") (quoting *Sw. Airlines*, 546 F.2d at 95).

**[4]** To determine whether a nonparty "assumed control over" a previous action so as to be bound by its judgment, a court must evaluate whether the "relationship between the nonparty and a party was such that the nonparty had the same practical opportunity to control the course of the proceedings." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FED. PRAC. & PROC. § 4451, p. 373 (2d ed. 2002). In *Montana*, 440 U.S. 147, the Supreme Court concluded that privity between the government and the civil plaintiff in a prior action barred the government's subsequent suit. A private contractor disputed in state court the constitutionality of a Montana gross receipts tax, alleging that the tax discriminated against the federal government and private companies. The government later raised the same challenge—the consti-

tutionality of the gross receipts tax—in federal court. *Id.* at 151-53.

The Supreme Court reasoned that the later action by the United States was barred because the government was in privity with the private contractor in the state court suit. The government stipulated that, in the state action, it had: required the contractor's lawsuit to be filed; reviewed and approved its complaint; paid its attorneys' fees and costs; directed the appeal from the state trial court to the Supreme Court; appeared before and submitted an *amicus* brief in the Montana Supreme Court; directed the filing of a notice of appeal to the Supreme Court; and "effectuated" the company's abandonment of that appeal. *Id.* at 155. These circumstances demonstrated that "the United States plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel." *Id.* Central to the Court's holding in *Montana* was the notion that "[b]ecause such a [third party] has had the 'opportunity to present proofs and argument,' he has already 'had his day in court' even though he was not a formal party to the litigation." *Taylor*, 128 S.Ct. at 2173 (quoting Restatement 2d of Judgments § 39, Comment a, p. 302).

**[5]** The facts alleged by Bhatia[3] in support of his privity argument come nowhere close to establishing privity between the government and Inderra. To be sure, the FBI was involved in a parallel criminal investigation of Bhatia while the civil suit was ongoing, but nothing in the record supports the claim that the government controlled or influenced the civil litigation, or took the "laboring oar." *See Headwaters Inc. v. U.S.*

---

[3]The government contends that some of the facts alleged by Bhatia to establish privity were not before the district court, namely, that the FBI informed witnesses of the government's theory, located witnesses, induced them to speak, and gathered discovery. Bhatia mentioned several of these instances in his motion to dismiss, although phrased differently, and thus we consider that evidence as part of the record on review.

*Forest Serv.*, 399 F.3d 1047, 1054 (9th Cir. 2005) (holding that "parallel legal interests alone, identical or otherwise, are not sufficient to establish privity"). Inderra's objective was understandably self-interested—to obtain repayment of the $1.575 million loan fee. In contrast, the government's objective was pursuit of a separate criminal prosecution. Unlike the government's actions in *Montana*, the FBI did not direct or review Inderra's filings, had no "opportunity to present proofs and argument," and did nothing to influence or affect Inderra's litigation strategy.

[6] That fruits of the FBI's criminal investigation may have aided Inderra during its action does not rise to the level of a mutuality of interests necessary to preclude a subsequent criminal prosecution. Cooperation is not the same as control. Were we to adopt Bhatia's theory of privity, it would chill cooperation in parallel civil and criminal proceedings and impede the government's ordinary investigations in a criminal case. To invoke "control" as the basis for privity requires something beyond the cooperation and sharing of witness interviews that Bhatia presents here. At most, as the district court noted, "the only connection that exists between the parties of both cases can be found in periodic discussions between Inderra officials and Government agents."

[7] Because there was no privity between the government and Inderra, Bhatia's res judicata and estoppel claims are doomed from the start. Given the stark contrast between the circumstances in *Montana*, and those presented here, his claims had no "possible validity." *Zone*, 403 F.3d at 1104. We therefore dismiss his appeal for lack of jurisdiction.[4]

**DISMISSED.**

---

[4]For the same reason, we dismiss Bhatia's claim that the district court abused its discretion in not granting an evidentiary hearing on his motion to dismiss.